| | |
|---|---|
| DISTRICT COURT, ARAPAHOE COUNTY, COLORADO<br>Court Address: 7325 S. Potomac Street, #100<br>Centennial, CO 80112 | |
| **Plaintiff**: SUNBURST HOMEOWNERS ASSOCIATION, INC., a Colorado non-profit corporation;<br><br>**Defendants**: JUSTIN PENG; UNITED STATES DEPARTMENT OF THE TREASURY; JIM BLACK CONSTRUCTION, INC.; SU RYDEN AS PUBLIC TRUSTEE FOR ARAPAHOE COUNTY; SUE SANDSTROM AS TREASURER FOR ARAPAHOE COUNTY; UNKNOWN TENANT(S) IN POSSESSION. | ▲ COURT USE ONLY ▲<br><br>Case Number:<br>Div.:   Ctrm.: _____ |
| Attorneys for Plaintiff:<br>THE DUPONT LAW FIRM, LLC<br>Stephane R. Dupont, #39425<br>Address: PO Box 1073, Castle Rock, CO 80104<br>Phone Number: (720) 644-6115 | |

## COMPLAINT FOR FORECLOSURE

COMES NOW Plaintiff, Sunburst Homeowners Association, Inc. ("Plaintiff"), by and through its undersigned attorneys, The Dupont Law Firm, LLC, and hereby files its Complaint for Foreclosure against the above-named Defendants and states, alleges and avers as follows:

1. This is an action for damages and for judicial foreclosure of a homeowner association assessment lien against Defendant, Justin Peng, and is within the jurisdiction of the District Court.

2. Venue is proper because this action seeks judicial foreclosure of Property located in the County of Arapahoe, State of Colorado.

3. The Plaintiff has formally resolved, by a recorded vote, to authorize the filing of this legal action against the specific unit as required by C.R.S. § 38-33.3-316(11)(a)(II). A copy of the authorization is annexed hereto as **Exhibit 'A'**.

4. Defendant, Justin Peng, is the record owner of the following real property commonly known as 16316 East Rice Place, #A, Aurora, CO 80015 ("Property"), which is legally described as follows:

   *Lot 81, Block 2, Sunburst, County of Arapahoe, State of Colorado.*

5. On or about October 4, 2017, Defendant, Justin Peng, took title to the Property as evidenced by the Quitclaim Deed ("Deed") recorded on October 4, 2017, at Reception No.

1

D7113220 of the public records of the County of Arapahoe, State of Colorado. The Deed is annexed hereto as **Exhibit 'B'**.

6. Defendant, Justin Peng, by taking the Deed to the above described Property, became subject to, bound by, and agreed to the terms of the Declaration of Covenants, Conditions and Restrictions of Sunburst recorded in Official Records Book 2862 at Page 467 of the County of Arapahoe public records and all amendments thereto (hereinafter referred to as the "Declaration").

7. Defendant, Justin Peng, agreed to pay and is subject to the covenant in Article IV, Section 1 of the Declaration personally obligating her to pay assessments on the Property imposed by the Board of Directors of the Association.

Article IV, Section 1 of the Declaration (annexed hereto as **Exhibit 'C'**) provides in pertinent part as follows:

> *"...each Owner of a Lot by acceptance of a deed therefor\...is deemed to covenant and agree to pay to the Association: (1) annual assessments or charges"*

8. Defendant, Justin Peng, is further liable for payment of all assessments, interest, late charges, fines and attorneys' fees and costs pursuant to Article IV, Section 1 of the Declaration and C.R.S. 38-33.3-316 which provide and establish a lien in favor of Plaintiff for same.

9. Defendant, Justin Peng, has violated the terms and provisions of Section 4.01 of the Declaration and C.R.S. 38-33.3-316 by failing to timely pay assessments, interest, late charges, fines and attorney fees and costs owed to Plaintiff.

10. More particularly, Defendant, Justin Peng, is indebted to Plaintiff for unpaid assessments, late charges, interest, and attorney fees and costs as of July 15, 2020 consisting of more than six (6) months of assessments owed, together with additional assessments, late fees, interest, attorney fees and costs, and all other allowed charges pursuant to the Declaration which are incurred through the date of sale.

11. To further evidence the lien in favor of the Association, as provided by the Declaration and C.R.S. 38-33.3-316, and to give additional notice thereof to Defendant, Justin Peng, and third parties, Plaintiff filed a Notice of Assessment Lien on the Property with the Clerk and Recorder of the County of Arapahoe, State of Colorado on August 26, 2019 at Reception No. D9086953 (hereinafter referred to as the "lien"). A copy of the lien is annexed hereto as **Exhibit 'D'**. The lien secures delinquent assessments and other charges coming due since July 1, 2015.

12. Pursuant to the Declaration and Article 38-33.3-316 of the Colorado Revised Statutes, Plaintiff is entitled to foreclose its lien against the Defendant, Justin Peng.

13. In addition, Plaintiff is entitled to an award of attorney's fees and costs in the collection and foreclosure of its lien pursuant to the Declaration and Colorado Revised Statutes 38-33.3-123(1) and 38-33.3-316(7).

14. Upon the basis of reasonable inquiry by the Plaintiff, Defendant, Justin Peng, is not an infant, incompetent, officer or agents of the State of Colorado, or in the military service.

15. To avoid tax sales and tax deeds which would extinguish its position, Plaintiff may be forced to pay the property taxes on the subject Property. An undetermined amount will be claimed from Defendant, Justin Peng, in the bid letter submitted for Sheriff's Sale representing reimbursement of any property taxes paid.

16. Defendant, United States Department of the Treasury (hereinafter 'IRS'), may claim an interest in the Property being foreclosed herein by virtue of a Notice of Federal Tax Lien, recorded on August 10, 2015 at Reception No. D5089326 of the Arapahoe County public records, relating to taxes owed by the former owner of the Property, Oiwah Pang Fung. The lien is a nominee lien and the IRS has the burden of proving that same is valid and enforceable as a nominee lien. As a result of the following, the IRS lien should be subordinated to the Plaintiff's lien:

   a) On November 29, 2005 Oiwah Fung became the owner of the property and, on that same date, provided a Power of Attorney to Hua Nien Peng. The Power of Attorney provided Hua Nien Peng with the ability to transfer title to the Property at any time.

   b) On August 8, 2014, Hua Nien Peng, per the authority in the Power of Attorney, transferred title to the Property from Oiwa Fung to Hua Nien Peng;

   c) On August 10, 2015, more than a year after the transfer of title to the Property and nearly 10 years after the Power of Attorney was executed, the IRS recorded its nominee tax lien against the Property relating solely to taxes due by the initial owner of the Property, Oiwah Fung. Oiwa Fung is currently approximately 87 years of age which likely substantiates her prior execution of a Power of Attorney in 2005. At the time of the Property transfer in 2014, she was approximately 81 years of age.

   d) On October 4, 2017, title to the Property transferred from Hua Nien Peng to Defendant, Justin Peng.

   e) Plaintiff believes that the foregoing facts justify the subordination of the IRS lien. The IRS has not taken action to enforce its lien since 2015 and prevented other creditors from enforcing their security interests by claiming first lien priority. Plaintiff, a non-profit corporation, has not been paid assessment fees in years and desires to 'stop the bleeding' and move forward by filing this action. Plaintiff requests that the IRS lien be subordinated with the IRS receiving the remaining sale proceeds from the foreclosure sale after payment of the amount due on Plaintiff's comparatively small assessment lien. Additionally, a portion of the amount due to the Plaintiff and secured by its lien came due prior to recording of the IRS lien.

3

17. Defendant, Jim Black Construction, Inc., may claim a lien against the Property being foreclosed herein by virtue of a Statement of Mechanic's Lien recorded on November 19, 2018 at Reception No. D8113970, however, any such interest is inferior to the Plaintiff's lien being foreclosed herein by their failure to timely enforce same.

18. Defendant, Su Ryden, is named in their capacity as the Public Trustee of Arapahoe County, Colorado.

19. Defendant, Sue Sandstrom, is named in their capacity as the Treasurer for Arapahoe County, and may claim an interest in the property being foreclosed by virtue of unpaid property taxes.

20. Defendants(s), Unknown Tenant(s) in Possession, may claim an interest in the property being foreclosed by virtue of being occupants/tenants of the subject real property, however, any such interest is inferior to the Plaintiff's lien being foreclosed herein.

WHEREFORE, Plaintiff prays for the following relief:

A. Entry of Judgment against Defendant, Justin Peng, for delinquent assessments, late charges, interest and attorney fees owed the Plaintiff.

B. That the Plaintiff's lien be adjudged a prior and superior lien upon the Property, excepting only real property taxes and assessments not yet due and payable and special real property assessments not yet certified to the Treasurer's office of the County of Arapahoe, Colorado.

C. That all other interests, be adjudged to be junior and inferior to the lien claimed by Plaintiff, thereby rendering same null, void and extinguished.

D. That the Plaintiff's lien be foreclosed and the Property sold at public sale for the amount of the Judgment against Defendant, Justin Peng, together with additional interest, attorney's fees and costs, unpaid assessments, late charges, and such other charges as allowed by the Declaration through the date of the Sheriff's Sale.

E. For an Order determining that the Property is not "agricultural real estate" within the meaning of Colorado Revised Statues 1973, Section 38-38-302(4).

F. For an Order that the proceeds from the foreclosure sale be applied as follows:

1. First to pay all fees, costs, and expenses incurred in connection with the sale;

2. Second, to repay advances for taxes, insurance, other items as allowed by law;

3. Third, to pay Plaintiff's sums due it for unpaid assessments and pursuant to the judgment awarded herein; and

    4.    Fourth, to pay any balance remaining into the Registry of the Court, said balance to be applied as the Court shall hereafter direct.

G. For an Order providing that following the expiration of all applicable redemption periods, the rights, tenancy, and lease of any party in possession be terminated and Plaintiff be granted possession of the Property.

H. Such other and further relief as this Court may deem just and equitable.

Dated: July 17, 2020

                THE DUPONT LAW FIRM, LLC

By:_____
          Stephane R. Dupont, #39425

Plaintiff's Address:
c/o Homestead Management Corp.
1499 W. 121st Avenue
Westminster, CO 80234

THIS IS AN ATTEMPT TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

# EXHIBIT 'A'

## BOARD RESOLUTION AUTHORIZING JUDICIAL FORECLOSURE

WHEREAS, the **Sunburst Homeowners Association** has a lien against the property located at **16316 E Rice Place, #A (Peng)** and the balance of the assessments and other charges secured by the Association's lien equals or exceeds six months of common expense assessments based on a periodic budget adopted by the Association.

BE IT RESOLVED that the Association, after due consideration, hereby authorizes the filing of a lawsuit to foreclose the Association lien against the subject real property.

Dated this __17__ day of __July 2020__.

_____
Board Member

Reception #:D7113220, 10/04/2017 at 12:56:13 PM, 1 OF 3, Rec Fee $23.00
Arapahoe County CO Matt Crane, Clerk & Recorder

# EXHIBIT 'B'

Prepared by:
Justin Peng
16316 E. Rice Pl., Unit A, Aurora, Colorado 80015
Parcel ID:

## Quitclaim Deed

THIS DEED is dated August 5, 2017, between:

Hua Nien Peng, not married, of 16316 E. Rice Pl., Unit A, Aurora, Colorado 80015, (the "Grantor")

AND

*RJN*

Justin Peng, not married, of 16316 E. Rice Pl., Unit A, Aurora, Colorado 80015, (the "Grantee")

WITNESS, that the Grantor, for and in consideration of the sum of $10.00, the receipt and sufficiency of which is hereby acknowledged, have remised, released, and sold, as well as quitclaim, unto the Grantees, their heirs and assigns forever all the right, title, interest, claim and demand which the Grantor has in the real property, together with improvements, if any, situate, lying and in the County of Arapahoe of the State of Colorado, described as follows:

Lot 81, BLK 2 Sunburst.

according to the recorded plat in the Office of the County Clerk and Recorder filed August 5, 2017.

This property is also known by street number as 16316 E. Rice Pl., Unit A, Aurora, Colorado 80015.

Assessor's schedule or parcel number: 2073-08-1-23-074.

TO HAVE AND TO HOLD the same, together with all and singular the appurtenances and privileges belonging on the property, or in anywise appertaining to the property, and all the estate, right, title, interest and claim whatsoever of the Grantor, either in law or equity, to the only proper use and benefit of the Grantee, and the Grantee's heirs and assigns forever.

**IN WITNESS WHEREOF** the Grantor has executed this deed on the day and year above written.

Signed in the presence of:

_____
Signature

_____
Name

_____
Hua Nien Peng

**EXHIBIT 'C'**

1785386

AMENDMENT TO
DECLARATION OF
COVENANTS, CONDITIONS AND RESTRICTIONS
OF
SUNBURST

BOOK 2871 PAGE 672

WHEREAS, U.S. HOME CORPORATION, a Delaware corporation, is the owner of the following described real property, situate in the County of Arapahoe, State of Colorado:

A tract of land in Sunburst, a subdivision, located in Section 8, Township 5 South, Range 66 West, of the 6th P.M., City of Aurora, County of Arapahoe, State of Colorado, more particularly described as follows:

Commencing at the Southeast corner of the Northwest quarter of the Northeast quarter; thence along the South line of Sunburst S 89°45'28" W, 307.96 feet to the True Point of beginning; thence continuing along the South line of Sunburst S 89°45'28" W, 667.89 feet; thence N 00°14'32" W, 93.35 feet; thence N 59°17'12" E, 19.72 feet; thence N 00°14'32" W, 122.14 feet to a point on a curve; thence along a curve to the right whose chord bears N 86°45'30" E, 85.54 feet, having a central angle of 08°40'20", a radius of 565.67 feet and an arc length of 85.62 feet to a point of tangency; thence S 88°55'20" E, 226.36 feet to a point on a curve; thence along a curve to the right whose chord bears N 14°00'28" E, 108.20 feet, having a central angle of 05°30'00", a radius of 1127.57 feet and an arc length of 108.24 feet to a point of reverse curvature; thence along a curve to the left, said curve having a central angle of 19°45'11", a radius of 470.49 feet and an arc length of 162.22 feet; thence N 89°59'59" E, 156.17 feet to a point on a curve, thence along a curve to the right whose chord bears S 11°12'11" E, 28.18 feet, having a central angle of 03°32'13", a radius of 456.08 feet and an arc length of 28.19 feet; thence S 12°58'28" E, 93.05 feet to a point of curvature; thence along a curve to the right, said curve having a central angle of 92°24'12", a radius of 150.00 feet and an arc length of 241.91 feet; thence S 02°43'47" E, 66.50 feet; thence S 12°56'58" E, 37.36 feet; thence S 19°54'32" E, 61.46 feet; thence S 00°14'32" E, 28.31 feet to the True Point of Beginning.

and,

WHEREAS, on October 5, 1976, there was recorded in Book 2662 at Page 467 in the office of the Clerk and Recorder of Arapahoe County, Colorado, certain declarations of covenants, conditions and restrictions for Sunburst having for their purpose the protection of the value and desirability of the above described real property,

and,

WHEREAS, through reason of clarification, amplification and change of certain standards and requirements, U.S. Home Corporation, as the Declarant of said declarations desires to amend same, and more specifically the following:

-3-

---

BOOK 2871 PAGE 674

ARTICLE II, Section 4, to read as follows:

"First mortgagees of Lots shall have the right, jointly or singly, to pay taxes or other charges or assessments which are in default and which may become a lien against the Common Area and may pay overdue premiums on hazard insurance policies or secure new hazard insurance coverage on the lapse of a policy for the Common Area, and any first mortgagees making any such payment shall be owed immediate reimbursement therefor from the Association."

ARTICLE VI, Section 8, to read as follows:

"The Architectural Control Committee may grant reasonable variances or adjustments from any conditions and restrictions imposed by this Article or Article VIII hereof in order to overcome practical difficulties and prevent unnecessary hardships arising by reason of the application of restrictions contained in this Article or Article VIII hereof. Such variances or adjustments shall be granted only in case the granting thereof shall not be materially detrimental or injurious to the other property or improvements in the neighborhood and shall not militate against the general intent and purpose hereof."

ARTICLE VII, Section 1, deletion of the second sentence thereof, said Section to read as follows:

"The structures of each Lot shall be maintained in a neat and attractive manner by the Owner thereof."

ARTICLE VII, Section 3, deleted the reference to Section 1 contained therein, to read as follows:

"The cost of such maintenance referred to in Section 2 of this Article shall be assessed against the Lot upon which such maintenance is done and shall be added to and become a part of the regular assessment or charge to which such Lot is subject under Article IV hereof."

ARTICLE VII, Section 4, deleted in its entirety and replaced with a new Section 4 to read as follows:

-3-

---

BOOK 2871 PAGE 675

"Section 4. Maintenance of Lots. The Association shall be responsible for the landscaping and maintenance of the grounds of each Lot, and shall have the grass, weeds, trees and vegetation on each Lot cut and/or trimmed when necessary. No Owner shall, in whole or in part, change the landscaping of his Lot by the addition or removal of any items thereon without the prior written approval of the Architectural Control Committee."

ARTICLE VII, Section 5, deleted in its entirety and replaced with a new Section 5 to read as follows:

"Section 5. Painting of Residence. Notwithstanding anything to the contrary contained in this Article VII, the Association shall be responsible for the periodic repainting of the exteriors of the residences constructed on the Lots, and no Owner shall re-paint, in whole or in part, the residence constructed on his Lot."

ARTICLE VII, Section 6, a new paragraph to read as follows:

"Section 6. Access at Reasonable Hours. For the purposes solely of performing the maintenance referred to in Sections 2, 4 and 5 of this Article, the Association, through its duly authorized agents or employees, shall have the right, after reasonable notice to the Owner, to enter upon any Lot at reasonable hours."

ARTICLE VIII, Section 14, addition of the words "unless specifically designated by the Association therefor," in the first sentence and deletion of the word "unless" in the last sentence in said section, said section to read as follows:

"Except as expressly heretofore provided, no Lot, including the streets and Association-owned private streets, drives or parking areas, unless specifically designated by the Association therefor, shall be used as a parking, storage, display or accommodation area for any type of house trailer, camping trailer, boat trailer, hauling trailer, running gear, boat or accessories thereto, motor driven cycle, truck, self-contained motorized vehicle, or any type of van except as a temporary expedience for loading, delivery, emergency

-4-

---

BOOK 2871 PAGE 676

etc. (however, this restriction shall not restrict trucks or other commercial vehicles within the Properties which are necessary for the construction of residential dwellings or maintenance of the Common Areas). The same shall be stored, parked or maintained wholly within a garage area of the Lot with the garage door in a closed position."

This amendment shall be construed to be deemed a part of said declarations as though fully set forth therein; and except as amended herein, all of the remaining covenants, conditions and restrictions of said declarations shall remain in full force and effect.

IN WITNESS WHEREOF, the undersigned officers of U.S. Home Corporation, have unto this amendment to declarations of covenants, conditions and restrictions hereunto set their hands and seals this 19th day of October, 1978.

ATTEST:                                 U.S. HOME CORPORATION

_____              _____
Division Assistant Secretary            Division President

STATE OF COLORADO  )
                   ) ss.
COUNTY OF DENVER   )

The foregoing instrument was acknowledged before me this 19th day of October, 1978, by Jack A. Witkin as Division President and Jack A. Short as Division Assistant Secretary of U.S. HOME CORPORATION.

Witness my hand and official seal.

My Commission expires: My Commission expires January 15, 1980

_____
Notary Public

-5-

ARTICLE II, Property Rights in the Common Area, Section 1, Owners' Easements of Enjoyment, (Page 2).

ARTICLE II, Property Rights in the Common Area, Section 2, Extent of Owners Easements, Paragraph (c),(Page 3).

ARTICLE II, Property Rights in the Common Area, Section 4, Payment of Taxes or Insurance by Mortgagees, (Page 4).

ARTICLE VI, Architectural Control Committee, Section 8, Variance, (Page 13).

ARTICLE VII, Exterior Maintenance, Section 1, General, (Page 14).

ARTICLE VII, Exterior Maintenance, Section 3, Assessment of Cost, (Page 14).

ARTICLE VII, Exterior Maintenance, Section 4, Maintenance of Lots, (Page 14).

ARTICLE VII, Exterior Maintenance, Section 5, Painting of Residence, (Page 15).

ARTICLE VII, Exterior Maintenance, Section 6, Access at Reasonable Hours, (Page 15).

ARTICLE VIII, Restrictions, Section 14, Restrictions on Parking and Storage, (Page 19).

NOW THEREFORE, the same U.S. Home Corporation, does for itself hereby amend the aforementioned articles to read as follows:

ARTICLE II, Section 1, to read as follows:

"Owners' Easements of Enjoyment. Subject to the provisions of Section 2 of this Article, every Owner shall have a non-exclusive right and easement of enjoyment in and to the Common Area, such right and easement to include, but be in no way limited to, the right of ingress and egress over and across all private roads, cul-de-sacs and other portions of the Common Area as may be necessary to provide vehicular and pedestrian access to and from each Lot, and such easement shall be appurtenant to and shall pass with the title to every Lot."

ARTICLE II, Section 2, Paragraph (c), to read as follows:

"The right of the Association to promulgate and publish rules and regulations which each Member shall strictly comply with, including but not limited to, the right of the Association to establish reasonable charges for the use of all or any portion of the Common Area; and"

-2-

---

TABLE OF CONTENTS
DECLARATION
OF COVENANTS, CONDITIONS AND RESTRICTIONS
OF SUNBURST

| | pg. |
|---|---|
| ARTICLE I - DEFINITIONS | 1-2 |
| ARTICLE II - PROPERTY RIGHTS IN THE COMMON AREA | 2-4 |
| Section 1. Owners' Easements of Enjoyment | |
| Section 2. Extent of Owners' Easements | |
| Section 3. Delegation of Use | |
| Section 4. Payment of Taxes or Insurance by Mortgagees | |
| ARTICLE III - MEMBERSHIP AND VOTING RIGHTS | 4-5 |
| Section 1. Membership | |
| Section 2. Classes of Membership | |
| ARTICLE IV - COVENANT FOR MAINTENANCE ASSESSMENTS | 5-10 |
| Section 1. Creation of the Lien and Personal Obligation of Assessments | |
| Section 2. Purpose of Assessments | |
| Section 3. Maximum Annual Assessment | |
| Section 4. Special Assessments for Capital Improvements | |
| Section 5. Notice and Quorum for Any Action Authorized under Sections 3 and 4 | |
| Section 6. Uniform Rate of Assessment | |
| Section 7. Date of Commencement of Annual Assessments | |
| Section 8. Effect of Non-Payment of Assessments: Remedies of the Association | |
| Section 9. Working Capital | |
| Section 10. Subordination of the Lien to Mortgages | |
| ARTICLE V - PARTY WALLS | 10-11 |
| Section 1. General Rules of Law to Apply | |
| Section 2. Sharing of Repair and Maintenance | |
| Section 3. Destruction by Fire or Other Casualty | |
| Section 4. Weatherproofing | |
| Section 5. Right to Contribution Runs With Land | |
| Section 6. Arbitration | |
| ARTICLE VI - ARCHITECTURAL CONTROL COMMITTEE | 11-14 |
| Section 1. Composition of Committee | |
| Section 2. Review by Committee | |
| Section 4. Procedures | |
| Section 5. Vote | |
| Section 6. Records | |
| Section 7. Liability | |
| Section 8. Variance | |
| Section 9. Minor Violations of Setback Restrictions | |
| ARTICLE VII - EXTERIOR MAINTENANCE | 14-15 |
| Section 1. General | |
| Section 2. Failure to Maintain | |
| Section 3. Assessment of Cost | |
| Section 4. Painting of Residence | |
| Section 5. Access at Reasonable Hours | |

| | |
|---|---|
| ARTICLE VIII - RESTRICTIONS | 15-20 |
| Section 1. General Plan | |
| Section 2. Restrictions Imposed | |
| Section 3. Use of Common Area | |
| Section 4. Single Family Use | |
| Section 5. Animals | |
| Section 6. Temporary Structures | |
| Section 7. Miscellaneous Structures | |
| Section 8. Property to be Maintained | |
| Section 9. Lots Not to be Subdivided | |
| Section 10. Underground Electric Lines | |
| Section 11. No Noxious or Offensive Activity | |
| Section 12. No Hazardous Activities | |
| Section 13. No Annoying Light, Sounds or Odors | |
| Section 14. Restrictions on Parking and Storage | |
| Section 15. Height Restrictions | |
| Section 16. Dwelling Cost, Quality and Size | |
| Section 17. Clothes Lines and Storage | |
| Section 18. Garbage and Refuse Disposal | |
| Section 19. Repair | |
| Section 20. Tanks | |
| ARTICLE IX - GENERAL PROVISIONS | 21-25 |
| Section 1. Enforcement | |
| Section 2. Severability | |
| Section 3. Construction and Maintenance Easement | |
| Section 4. Easement for Encroachments | |
| Section 5. Conflict of Provisions | |
| Section 6. Annexation | |
| Section 7. Condemnation | |
| Section 8. Duration, Revocation and Amendment | |
| Section 9. Registration by Owner of Mailing Address | |
| Section 10. Leases | |
| Section 11. VA Approval | |

---

1780506

DECLARATION
OF COVENANTS, CONDITIONS AND RESTRICTIONS
OF
SUNBURST

THIS DECLARATION, made and entered into this 2nd day of October, 1978, by U.S. Home Corporation, a Delaware corporation, hereinafter referred to as "Declarant".

WITNESSETH:

WHEREAS, Declarant is the owner of that certain real property in the County of Arapahoe, State of Colorado, which is described on Exhibit A attached hereto and incorporated herein by reference.

NOW, THEREFORE, Declarant hereby declares that all of the properties described above shall be held, sold and conveyed subject to the following easements, restrictions, covenants, and conditions which shall run with the land and be binding on all parties having any right, title or interest in the above described properties or any part thereof, their heirs, successors and assigns, and shall inure to the benefit of each owner thereof.

ARTICLE I

DEFINITIONS

Section 1. "Association" shall mean and refer to Sunburst Homeowners Association, Inc., a Colorado nonprofit corporation, its successors and assigns.

Section 2. "Owner" shall mean and refer to the record owner, whether one or more persons or entities, of fee simple title to any Lot which is a part of the Properties, including contract sellers, but excluding those having such interest merely as security for the performance of an obligation.

Section 3. "Properties" shall mean and refer to that certain real property described on Exhibit A hereto and such additions thereto as may hereafter be brought within the jurisdiction of the Association.

BOOK 2852 PAGE 468

Section 4. "Common Area" shall mean all real property (including the improvements thereto) owned by the Association for the common use and enjoyment of the Owners. The Common Area to be owned by the Association at the time of the conveyance of the first Lot is described on Exhibit B attached hereto and incorporated herein by reference.

Section 5. "Lot" shall mean and refer to any plot of land shown upon any recorded subdivision map including the Properties with the exception of the Common Area, including any real property hereafter made subject to the provisions of this Declaration.

Section 6. "Declarant" shall mean and refer to U.S. Home Corporation, a Delaware corporation, its successors and assigns if such successors or assigns should acquire more than one undeveloped Lot from the Declarant for the purpose of development.

Section 7. "Member" shall mean and refer to every person or entity who holds membership in the Association.

→ Section 8. "Architectural Control Committee" shall mean the committee appointed by Declarant or by the Board of Directors of Sunburst Homeowners Association, Inc.

ARTICLE II

PROPERTY RIGHTS IN THE COMMON AREA

Section 1. Owners' Easements of Enjoyment. Subject to the provisions of Section 2 of this Article, every Owner shall have a non-exclusive right and easement of enjoyment in and to the Common Area and such easement shall be appurtenant to and shall pass with the title to every Lot.

Section 2. Extent of Owners' Easements. The rights and easements of enjoyment created hereby shall be subject to the following:

(a) The right of the Association, in accordance with its Articles and Bylaws, to borrow money for the purpose of improving the Common Area and, with written consent of the

-2-

BOOK 2852 PAGE 469

Members entitled to vote two-thirds (2/3) of the votes of each class of membership and 100% of all first mortgagees (based upon one vote for each mortgage owned), to mortgage said property as security for any such loan; and

(b) The right of the Association to take such steps as are reasonably necessary to protect the Common Area against foreclosure; and

(c) The right of the Association to promulgate and publish rules and regulations which each Member shall strictly comply with; and

(d) The right of the Association as provided in its Articles and Bylaws, to suspend the voting rights of a Member for any period during which any assessment against his Lot remains unpaid and, for a period not to exceed thirty (30) days, for any infraction of its published rules and regulations; and

(e) The right of the Association to dedicate or transfer all or any part of the Common Area to any public agency, authority, or utility for such purposes and subject to such conditions as may be agreed to by the Members, provided that no such dedication or transfer shall be effective unless first approved in writing by the Members entitled to vote two-thirds (2/3) of the votes of each class of membership hereunder and by 100% of the holders of all first mortgages on any Lots (based upon one vote for each mortgage owned), and unless written notice of the proposed agreement and action thereunder is sent to every Member at least thirty (30) days in advance of any action taken, and unless such dedication or transfer is approved by the County of Arapahoe, Colorado, or any successor governmental entity having jurisdiction over the Properties, if required by resolutions or ordinances thereof, and provided further that

-3-

BOOK 2852 PAGE 470

the granting of easements for public utilities or for other public purposes consistent with the intended use of the Common Area shall not be deemed a transfer within the meaning of this Subsection (e).

(f) The right of the Association to close or limit the use of the Common Area while maintaining, repairing and making replacements in the Common Area.

Section 3. Delegation of Use. Any Owner may delegate, in accordance with the Bylaws, his right of enjoyment to the Common Area and facilities to the members of his family, his tenants, or contract purchasers who reside on his Lot.

Section 4. Payment of Taxes or Insurance by Mortgagees. First mortgagees of Lots shall have the right to pay taxes or other charges or assessments which are in default and which may become a lien against the Common Area and may pay overdue premiums on hazard insurance policies or secure new hazard insurance coverage on the lapse of a policy for the Common Area, and any first mortgagees making any such payment shall be owed immediate reimbursement therefor from the Association.

ARTICLE III

MEMBERSHIP AND VOTING RIGHTS

Section 1. Membership. Every Owner of a Lot within the Properties shall be a Member of the Association. Membership shall be appurtenant to and may not be separated from ownership of any Lot.

Section 2. Classes of Membership. The Association shall have two classes of voting membership:

Class A. Class A Members shall be all Owners, with the exception of the Declarant, and shall be entitled to one vote for each Lot owned. When more than one person holds an

-4-

BOOK 2852 PAGE 471

interest in any Lot, all such persons shall be Members, and the vote for such Lot shall be exercised as they determine, but in no event shall more than one vote be cast with respect to any such Lot.

Class B. The Class B Member(s) shall be the Declarant and shall be entitled to three (3) votes for each Lot owned. The Class B membership shall cease and be converted to Class A membership on the happening of either of the following events, whichever occurs earlier:

(a) when the total votes outstanding in the Class A Membership equal the total votes outstanding in the Class B Membership; or

(b) on January 1, 1990.

Notwithstanding the foregoing, however, in the event that the Declarant shall annex any additional property to this Declaration pursuant to the provisions of Section 6 of Article IX hereof, then the Class B membership shall not cease and be converted to Class A membership unless and until the total votes outstanding in the Class A membership in each of such annexed properties equals the total votes outstanding in the Class B membership of each of such annexed properties, provided, however, that in no event shall the Class B membership extend beyond January 1, 1990.

ARTICLE IV

COVENANT FOR MAINTENANCE ASSESSMENTS

Section 1. Creation of the Lien and Personal Obligation of Assessments. The Declarant, for each Lot owned within the Properties, hereby covenants, and each Owner of any Lot by acceptance of a deed therefor, whether or not it shall be so expressed in such deed, is deemed to covenant and agree to pay to the Association: (1) annual assessments or charges, and (2) special assessments, such assessments to

-5-

BK 2862 PAGE 472

be established and collected as hereinafter provided. The annual and special assessments, together with interest, costs, and reasonable attorney's fees, shall be a charge on the land and shall be a continuing lien upon the property against which each such assessment is made. To evidence such lien the Board of Directors or Managing Agent shall prepare a written notice setting forth the amount of such unpaid indebtedness, the name of the Owner of the Lot and a description of the Lot. Such a notice shall be signed by one of the Board of Directors or by the Managing Agent and shall be recorded in the office of the Clerk and Recorder of the County of Arapahoe, Colorado. Such lien for unpaid assessments shall attach from the date of the failure of payment of the assessment. Such lien may be enforced by foreclosure of the defaulting Owner's Lot by the Association in like manner as a mortgage on real property, upon the recording of a notice or claim thereof. In any such foreclosure the Owner shall be required to pay the costs and expenses of such proceedings, the costs and expenses for filing the notice or claim of lien and all reasonable attorney's fees. Each such assessment, together with interest, costs, and reasonable attorney's fees, shall also be the personal obligation of the person who was the Owner of such property at the time when the assessment fell due. The personal obligation for delinquent assessments shall not pass to his successors in title unless expressly assumed by them.

Section 2. Purpose of Assessments. The assessments levied by the Association shall be used exclusively to promote the recreation, health, safety and welfare of the residents of the Properties and for the improvement and maintenance of the Common Area.

-6-

BK 2862 PAGE 473

Section 3. Maximum Annual Assessment. Until January 1 of the year immediately following the conveyance of the first Lot by Declarant, the maximum annual assessment shall be Seven Hundred Twenty Dollars ($720.00).

(a) From and after January 1 of the year immediately following the conveyance of the first Lot by Declarant, the maximum annual assessment may be increased each year not more than seven percent (7%) above the maximum assessment for the previous year without a vote of the membership.

(b) From and after January 1 of the year immediately following the conveyance of the first Lot by Declarant, the maximum annual assessment may be increased by more than seven percent (7%) by a vote of two-thirds (2/3) of each class of Members who are voting in person or by proxy, at a meeting duly called for this purpose. The Board of Directors of the Association may, after consideration of the current maintenance costs and the financial requirements of the Association, fix the annual actual assessment at an amount less than the maximum.

(c) The Association shall maintain an adequate reserve fund out of the annual assessments for the maintenance, repair and replacement of those elements of the Common Area that must be replaced on a periodic basis.

Section 4. Special Assessments for Capital Improvements. In addition to the annual assessments authorized above, the Association may levy, in any assessment year, a special assessment applicable to that year only for the purpose of defraying, in whole or in part, the cost of any construction, reconstruction, repair, or replacement of a capital improvement upon the Common Area, including fixtures and personal property related thereto, provided that any such assessment shall have the assent of two-thirds (2/3) of the votes of each class of Members who are voting in person or by proxy at a meeting duly called for this purpose.

-7-

BK 2862 PAGE 474

Section 5. Notice and Quorum for Any Action Authorized Under Sections 3 and 4. Written notice of any meeting called for the purpose of taking any action authorized under Section 3 or 4 of this Article shall be sent to all Members not less than 30 days or more than 60 days in advance of the meeting. At the first such meeting called, the presence of Members or of proxies entitled to cast sixty (60) percent of all the votes of each class of membership shall constitute a quorum. If the required quorum is not present, another meeting may be called subject to the same notice requirement, and the required quorum at the subsequent meeting shall be one-half (1/2) of the required quorum at the preceding meeting. No such subsequent meeting shall be held more than 60 days following the preceding meeting.

Section 6. Uniform Rate of Assessment. Both annual and special assessments must be fixed at a uniform rate for all Lots sufficient to meet the expected needs of the Association, provided that, the rate set for the Lots owned by Declarant shall be fixed at one-quarter (1/4) of the assessment rate for the other Lots; and further provided, however, that in the event the assessed fees due the Association fail to meet its needs because of such partial Declarant assessment, then Declarant shall, upon written notice from the Association, pay a sufficient amount, up to the amount of full parity on such assessment, to the Association to meet any such shortfall so long as (a) such notice must be given within one year after the end of each annual assessment period and is waived if not made in such timely manner (such final one year period to terminate one year from the date of closing of the last Lot owned by Declarant within the Properties) and (b) Declarant shall have no

-8-

BK 2862 PAGE 475

obligation for any such shortfall caused by any decrease in assessments or expenditures for capital improvements, unless the same has been previously approved in writing by Declarant.

Section 7. Date of Commencement of Annual Assessments. The initial and all subsequent annual assessments shall commence on the first day of such month as determined by the Board of Directors of the Association, and shall be made due and payable in twelve monthly installments per annum on such dates as determined by the Board. Any Owner purchasing a Lot between installment due dates shall pay a pro rata share of the last installment due.

Section 8. Effect of Non-Payment of Assessments: Remedies of the Association. Any assessment not paid within thirty (30) days after the due date thereof shall bear interest from the due date at the rate of twelve percent (12%) per annum. The Association may bring an action at law against the Owner personally obligated to pay the same, or foreclose the lien against such Owner's Lot, and in the event a judgment is obtained, such judgment shall include interest on the assessment as above provided and a reasonable attorneys' fee to be fixed by the court together with the costs of the action. No Owner may waive or otherwise escape liability for the assessments provided for herein by non-use of the Common Area or abandonment of his Lot.

Section 9. Working Capital. The Association or Declarant may require an Owner, other than Declarant, to deposit with the Association an amount equal to the greater of a) $150.00, or b) two times the amount of the estimated monthly assessment, which sum shall be held, without interest, by the Association, as and for working capital.

-9-

BK 2852 PAGE 476

Such deposit shall not relieve an Owner from making the regular payment of assessments as the same become due. Upon the transfer of his Lot, an Owner shall be entitled to a credit from his transferee for same.

Section 10. Subordination of the Lien to Mortgages. The lien of the assessments provided for herein shall be subordinate to the lien of any first mortgage and to any executory land sales contract owned by the Veterans Administration or its assigns, wherein the named seller is the Administrator of Veterans Affairs, whether such contract is recorded or not. The lien of the assessment shall be superior to any homestead exemption now or hereafter provided by the laws of the State of Colorado. Transfer or actual or constructive possession of any Lot shall not affect the assessment liens. However, the transfer or actual or constructive possession of any Lot pursuant to mortgage foreclosure or any proceeding in lieu thereof, shall extinguish the lien of such assessments as to payments which became due prior to such transfer or actual or constructive possession. No transfer or actual or constructive possession shall relieve such Lot from liability for any assessments thereafter becoming due or from the lien thereof.

ARTICLE V
PARTY WALLS

Section 1. General Rules of Law to Apply. Each wall which is built as a part of the original construction of the residences upon the Properties and placed on the dividing line between the Lots shall constitute a party wall, and, to the extent not inconsistent with the provisions of this Article, the general rules of law regarding party walls and liability for property damage due to negligence or willful acts or omissions shall apply thereto.

-10-

BK 2852 PAGE 477

Section 2. Sharing of Repair and Maintenance. The cost of reasonable repair and maintenance of a party wall shall be shared by the Owners who make use of the wall in proportion to such use.

Section 3. Destruction by Fire or Other Casualty. If a party wall is destroyed or damaged by fire or other casualty, any Owner who has used the wall may restore it, and if the other Owners thereafter make use of the wall, they shall contribute to the cost of restoration thereof in proportion to such use without prejudice, however, to the right of any such Owners to call for a larger contribution from the others under any rule of law regarding liability for negligent or willful acts or omissions.

Section 4. Weatherproofing. Notwithstanding any other provision of this Article, an Owner who by his negligent or willful act causes the party wall to be exposed to the elements shall bear the whole cost of furnishing the necessary protection against such elements.

Section 5. Right to Contribution Runs With Land. The right of any Owner to contribution from any other Owner under this Article shall be appurtenant to and run with the land and shall pass to such Owner's successors in title.

Section 6. Arbitration. In the event of any dispute arising concerning a party wall, or under the provisions of this Article, each party shall choose one arbitrator, and such arbitrators shall choose one additional arbitrator, and the decision shall be by a majority of all the arbitrators.

ARTICLE VI
ARCHITECTURAL CONTROL COMMITTEE

Section 1. Composition of Committee. The Architectural Control Committee shall consist of three (3) persons appointed by the Board of Directors of the Association,

-11-

BK 2852 PAGE 478

provided, however, that until the entire project is completed and all Lots have been sold, Declarant shall appoint the Architectural Control Committee. A majority of the committee may designate a representative to act for it.

Section 2. Review by Committee. No structure or any attachment to an existing structure, whether a residence, an accessory building, a tennis court, a swimming pool, fences, walls, exterior lighting facilities, athletic facility, or other similar improvements or attachments, shall be constructed upon the Properties and no alteration of the exterior of a structure shall be made and no change in the final grade, nor the installation of any landscaping shall be performed, unless complete plans and specifications therefor (said plans and specifications to show exterior design, height, materials, color, location of the structure or addition to the structure, plotted horizontally and vertically, location and size of driveways, general plan of landscaping, fencing, walls, windbreaks and the grading plan) shall have been first submitted to and approved in writing by the Architectural Control Committee. The Architectural Control Committee shall exercise its best judgment to the end that all attachments, improvements, construction, landscaping and alterations to structures and on lands within the Properties conform to and harmonize with existing surroundings and structures.

Section 4. Procedures. The Architectural Control Committee shall approve or disapprove all plans within thirty (30) days after submission. In the event that the Architectural Control Committee fails to approve or disapprove such design and location within thirty (30) days after said plans and specifications have been submitted to it, approval will not be required and this Article will be deemed to have been fully complied with.

-12-

BK 2852 PAGE 479

Section 5. Vote. A majority vote of the Architectural Control Committee is required to approve a proposed improvement, unless the committee has designated a representative to act for it, in which case the decision of the representative shall control.

Section 6. Records. The Architectural Control Committee shall maintain written records of all applications submitted to it and of all actions taken by it thereon, and such records shall be available to Members for inspection at reasonable hours of the business day.

Section 7. Liability. The Architectural Control Committee and the Members thereof shall not be liable in damages to any person submitting requests for approval or to any Owner by reason of any action, failure to act, approval, disapproval, or failure to approve or disapprove in regard to any matter within its jurisdiction hereunder.

Section 8. Variance. The Architectural Control Committee may grant reasonable variances or adjustments from any conditions and restrictions imposed by this Article or Article VII hereof in order to overcome practical difficulties and prevent unnecessary hardships arising by reason of the application of the restrictions contained in this Article or Article VIII hereof. Such variances or adjustments shall be granted only in case the granting thereof shall not be materially detrimental or injurious to the other property or improvements in the neighborhood and shall not militate against the general intent and purpose hereof.

Section 9. Minor Violations of Setback Restrictions. If upon the erection of any residence upon any of the Lots which are subject to these restrictions, it is disclosed by survey that a minor violation or infringement of setback lines has occurred, such violation or infringement shall be

-13-

deemed waived by the Owners of the Lots immediately adjoining the Lot upon which the violation or infringement occurs, and such waiver shall be binding upon all other Owners who are subject to this Declaration. Nothing herein contained shall prevent the prosecution of a suit for any other violation of the restrictions contained in this Declaration. A "minor violation" for the purpose of this Section is a violation of not more than two (2) feet beyond the required setback lines or lot lines. This provision shall apply only to the original structures and shall not be applicable to any alterations or repairs to such structure.

ARTICLE VII

EXTERIOR MAINTENANCE

Section 1. General. The structures and grounds of each Lot shall be maintained in a neat and attractive manner by the Owner thereof. Upon the Owner's failure to do so, the Architectural Control Committee may, at its option, after giving the Owner thirty (30) days' written notice sent to his last known address, have the grass, weeds and vegetation cut when, and as often as, the same is necessary in its judgment, and may have dead trees, shrubs, and plants removed from any Lot.

Section 2. Failure to Maintain. Upon the Owner's failure to maintain the exterior of any structure on his Lot in good repair and appearance, the Architectural Control Committee may, at its option, after giving the Owner two (2) months' written notice, make repairs and improve the appearance in a reasonable and workmanlike manner.

Section 3. Assessment of Cost. The cost of such maintenance referred to in Sections 1 and 2 of this Article shall be assessed against the Lot upon which such maintenance is done and shall be added to and become part of the regular assessment or charge to which such Lot is subject under Article IV hereof.

-14-

Section 4. Painting of Residence. Notwithstanding anything to the contrary contained in this Article VII, the Association shall be responsible for the periodic re-painting of the exteriors of the residences constructed on the Lots, and no Owner shall re-paint, in whole or in part, the residence constructed on his Lot.

Section 5. Access at Reasonable Hours. For the purposes solely of performing the maintenance referred to in Sections 1, 2 and 4 of this Article, the Association, through its duly authorized agents or employees, shall have the right, after reasonable notice to the Owner, to enter upon any Lot at reasonable hours.

ARTICLE VIII

RESTRICTIONS

Section 1. General Plan. It is the intention of the Declarant to establish and impose a general plan for the improvement, development, use and occupancy of the Properties which shall be binding on and inure to the benefit of the Owners of the Properties, all thereof in order to enhance the value, desirability and attractiveness of the Properties and to subserve and promote the sale thereof.

Section 2. Restrictions Imposed. The Declarant hereby declares that all of the Properties shall be held and shall henceforth be sold, conveyed, used, improved, occupied, owned, resided upon and hypothecated upon and subject to the following provisions, conditions, limitations, restrictions, agreements and covenants.

Section 3. Use of Common Area.

A. No use shall be made of the Common Area which will in any manner violate the statutes, rules or regulations of any governmental authority having jurisdiction over the Common Area.

-15-

B. No Owner shall place any structure whatsoever upon the Common Area, nor shall any Owner engage in any activity which will temporarily or permanently deny free access to any part of the Common Area to all Members.

C. The use of the Common Area shall be subject to such rules and regulations as may be adopted from time to time by the Board of Directors of the Association.

D. No use shall ever be made of the Common Area which will deny ingress and egress to those Owners having access to Lots only over Common Area and the right of ingress and egress to said Lots by vehicle and otherwise is hereby expressly granted.

Section 4. Single Family Use. Except for Common Area, all Lots shall be used for private family residence purposes only. No business or profession of any nature shall be conducted on any Lot or in any structure constructed thereon except as provided below.

No building shall be erected, altered, placed or permitted to remain on any Lot other than one attached or detached single family dwelling not to exceed two stories in height and a private garage for not more than two cars, except that Declarant may use Lots and residences erected thereon for show homes and sales offices, field construction offices, storage facilities, and general business offices.

Section 5. Animals. No horses, cattle, sheep, goats, pigs, rabbits, poultry, or other animals of any description shall be kept or maintained on any Lot except that Owners may keep dogs, cats, fish, or other domestic animals which are bona fide household pets so long as such pets are not kept for commercial purposes and do not make objectionable noises or otherwise constitute a nuisance or inconvenience to any of the residents of adjacent property, and in compliance with all existing applicable local ordinances.

-16-

Section 6. Temporary Structures. No temporary house, trailer, tent, garage, or outbuilding shall be placed or erected upon any Lot, and no residence placed or erected upon any Lot shall be occupied in any manner at any time prior to its being fully completed in accordance with approved plans, nor shall any residence when completed be in any manner occupied until made to comply with all requirements, conditions and restrictions herein set forth; provided, however, that during the actual construction or alteration of a building on any Lot, necessary temporary buildings for storage of materials may be erected and maintained by the person doing such work. The work of constructing, altering or remodeling any building on any part of any Lot shall be prosecuted diligently from the commencement thereof until the completion thereof.

Section 7. Miscellaneous Structures. No advertising or signs of any character shall be erected, placed, permitted or maintained on any Lot other than a name plate of the occupant and a street number and except for a "for sale" sign not to exceed five (5) square feet; except that the Declarant shall be permitted to use larger signs during the promotional period. All types of refrigerating, cooking or heating apparatus must be concealed. No garbage or trash cans or receptacles shall be maintained in an exposed and unsightly manner. All antennae shall be installed inside the improvement on any Lot.

Section 8. Property to be Maintained. Each Lot at all times shall be kept in a clean, sightly and wholesome condition. No trash, litter, junk, boxes, containers, bottles, cans, implements, machinery, lumber or other building materials shall be permitted to remain exposed upon any Lots so that same are visible from any neighboring Lot or street, except as necessary during the period of construction.

-17-

BOOK 2852 PAGE 484

Section 9. Lots Not to be Subdivided. No Lot or Lots shall be subdivided, except for the purpose of combining portions with an adjoining Lot provided that no additional building site is created thereby. Not less than one entire Lot, as conveyed, shall be used as a building site.

Section 10. Underground Electric Lines. All electric, television, radio and telephone line installations and connections from a Lot Owner's property line to a residence or other structures shall be placed underground, except that during the construction of a residence the contractor or builder may install a temporary overhead utility line which shall be promptly removed upon completion of construction.

Section 11. No Noxious or Offensive Activity. No noxious or offensive activity shall be carried on upon any Lot nor shall anything be done or placed on any Lot which is or may become a nuisance or cause embarrassment, disturbance or annoyance to others.

Section 12. No Hazardous Activities. No activities shall be conducted on the Properties and on improvements constructed on the Properties which are or might be unsafe or hazardous to any person or property. Without limiting the generality of the foregoing, no firearms shall be discharged upon any of the Properties and no open fires shall be lighted or permitted on the Properties except in a contained barbecue unit while attended and in use for cooking purposes or within a safe and well-designed interior fireplace or except such campfires or picnic fires on property designated for such by the Association.

Section 13. No Annoying Light, Sounds or Odors. No light shall be emitted from any Lot which is unreasonably bright or causes unreasonable glare; no sound shall be

-18-

BOOK 2852 PAGE 485

emitted on any Lot which is unreasonably loud or annoying; and no odor shall be emitted on any Lot which is noxious or offensive to others.

Section 14. Restrictions on Parking and Storage. Except as expressly heretofore provided, no Lot, including the streets and Association-owned private streets, drives or parking areas, shall be used as a parking, storage, display or accommodation area for any type of house trailer, camping trailer, boat trailer, hauling trailer, running gear, boat or accessories thereto, motor driven cycle, truck, self-contained motorized vehicle, or any type of van except as a temporary expedience for loading, delivery, emergency, etc. (however, this restriction shall not restrict trucks or other commercial vehicles within the Properties which are necessary for the construction of residential dwellings or maintenance of the Common Area). The same shall be stored, parked or maintained wholly within a garage area of the Lot with the garage door in a closed position or off of the Properties.

Section 15. Height Restrictions. No structure shall be erected or maintained on any Lot which is in excess of twenty-six (26) feet in height. Height shall be the vertical distance of the structure measured from the lowest point of a finished grade on the Lot within ten (10) feet of the structure to the uppermost point of the structure. Chimneys, if allowed, shall be excluded in determining the height of a structure.

Section 16. Dwelling Cost, Quality and Size. No dwelling shall be permitted on any Lot at a construction cost of less than $19,000.00, based on a cost level prevailing on the date this instrument is recorded, it being the intention and purpose hereof to assure that all dwellings shall be of a quality of workmanship and materials

-19-

BOOK 2852 PAGE 486

substantially the same or better than that which can be produced on the date this instrument is recorded at the minimum cost stated herein for the minimum permitted dwelling size. The ground floor area of the main structure, exclusive of open porches and garages, shall not be less than 800 square feet for a one-story dwelling, nor less than 1,000 square feet on the main and upper level of a split-level dwelling, nor less than 500 square feet on the main floor for a dwelling of more than one story.

Section 17. Clothes Lines and Storage. No clothes lines, dog runs, drying yards, service yards, wood piles or storage areas shall be so located on any Lot so as to be visible from a street and/or public view and/or from the Common Area.

Section 18. Garbage and Refuse Disposal. No garbage, refuse, rubbish or cuttings shall be deposited on any street, and not on any lots unless placed in a suitable container suitably located, solely for the purpose of garbage pickup. All equipment for the storage or disposal of such materials shall be kept in clean and sanitary condition.

Section 19. Repair. No activity such as, but not limited to, maintenance, repair, rebuilding, dismantling, repainting, or servicing of any kind may be performed on any Lot unless it is done within completely enclosed garages or other structures located on the Lot which screen the sight and sound of the activity from the street and from adjoining property. The foregoing restriction shall not be deemed to prevent washing and polishing of any motor vehicle, boat, trailer or motor driven cycle together with those activities normally incident and necessary to such washing and polishing.

Section 20. Tanks. No tanks of any kind, either elevated or buried, shall be erected, placed or permitted upon any Lot.

-20-

BOOK 2852 PAGE 487

ARTICLE IX
GENERAL PROVISIONS

Section 1. Enforcement. The Association or any Owner shall have the right to enforce, by any proceeding at law or in equity, all restrictions, conditions, covenants, reservations, liens and charges now or hereafter imposed by the provisions of this Declaration. Failure by the Association or by any Owner to enforce any covenant or restriction herein contained shall in no event be deemed a waiver of the right to do so thereafter.

Section 2. Severability. Invalidation of any of these covenants or restrictions by judgment or court order shall in no way affect or limit any other provisions which shall remain in full force and effect.

Section 3. Construction and Maintenance Easement. If any portion of an exterior wall of a residence is situated within three feet of any adjoining Lot line, a valid easement shall and does exist, three feet in width along the adjoining Lot and adjacent to the said Lot line, which easement may be used for the purpose of construction, reconstruction and maintenance of said exterior wall of a residence that is situated within three feet from the nearest point of said easement.

Section 4. Easement for Encroachments. If any portion of a residence encroaches upon the Common Area or upon the easement of any adjoining Lot established under the provisions of Section 3 above, a valid easement on the surface and for subsurface support below such surface and for the maintenance of same, so long as it stands, shall and does exist.

Section 5. Conflict of Provisions. In case of conflict between this Declaration and the Articles of Incorporation or the Bylaws, this Declaration shall control.

-21-

BK 2852 PAGE 488

Section 6. Annexation. Additional land within the area described as SUNBURST, according to the recorded plat thereof, Arapahoe County, Colorado, may be annexed by the Declarant without the consent of the Owners within eight years of the date of this instrument provided that the VA determines that the annexation is in accord with the general plan heretofore approved by it.

Section 7. Condemnation. In the event proceedings are initiated by any government or agency thereof, seeking to take by eminent domain the Common Area, any part thereof or any interest therein, any improvement thereon, or any interest therein, with a value (including loss of value to the balance of the Common Area and improvements thereof), as reasonably determined by the Association in excess of $10,000.00, the Association shall give prompt notice thereof, including a description of the part of or interest in the Common Area or improvement thereon sought to be so condemned, to all first mortgagees of Lots, Members and to the Declarant. The Association shall have full power and authority to defend in said proceedings; provided that the Association shall not enter into proceedings, pursuant to which the Common Area or any part thereof or any interest therein, or any improvement thereon or any part thereof or interest therein is relinquished without giving all first mortgagees of Lots, Members and Declarant at least fifteen (15) days' prior written notice thereof.

In the event, following such proceedings, there is such a taking in condemnation or by eminent domain of a part or all of the Common Area, the award made for such taking shall be payable to the Association, subject to the rights of all first mortgagees. If seventy-five percent (75%) or more of the Owners approve the repair and restoration of the

-22-

BK 2852 PAGE 489

Common Area, the Association shall arrange for the same and shall disburse the proceeds of such award to the contractors engaged in such repair and restoration in appropriate progress payments. In the event that seventy-five percent (75%) or more of the Owners do not duly and promptly approve the repair and restoration of such Common Area, the Association shall disburse the net proceeds of such award to the Owners, the Owner of each Lot receiving one (1) equal share, provided that the Association shall first pay out of the share of each Owner the amount of any unpaid liens or encumbrances on his Lot in the order of the priority of such liens or encumbrances. No provision of this Declaration or of any other document relating to the Properties shall be deemed to give an Owner or any other party priority over the rights of a first mortgagee pursuant to the mortgage or deed of trust or seller or holder of any VA installment contract for sale of real estate on such Owner's Lot in the case of a distribution to an Owner of insurance proceeds or condemnation award for losses to or a taking of Lots or Common Area, or both.

Section 8. Duration, Revocation and Amendment. Each and every provision of this Declaration shall run with and bind the land for a term of twenty (20) years from the date of recording of this Declaration, after which time this Declaration shall be automatically extended for successive periods of ten (10) years each. Subject to the provisions of Section 6 above, this Declaration may be amended during the first twenty (20) year period by an instrument approved in writing by not less than 90% of the Members of all classes and by 75% of the holders of any recorded mortgage or deed of trust affecting any or all of the Lots, who have given the Association notice of their interest in any Lot,

-23-

BK 2852 PAGE 490

and thereafter by an instrument approved in writing by not less than 75% of the Members of all classes and 75% of said mortgage holders. Such amendment or revocation shall be effective when duly recorded; provided, however, that any amendment or revocation must comply with the Statutes of Colorado and the resolutions and ordinances of the County of Arapahoe, Colorado, or of any successor governmental entity having jurisdiction over the Properties, in existence at the time such amendment becomes effective. The manner in which common expenses are assessed shall not be altered, except with the express written consent of all Members of all classes and all first mortgagees.

Section 9. Registration by Owner of Mailing Address. Each Owner shall register his mailing address with the Association, and except for monthly statements and other routine notices, all other notices or demands intended to be served upon an Owner shall be sent by either registered or certified mail, postage prepaid, addressed in the name of the Owner at such registered mailing address. All notices, demands, or other notices intended to be served upon the Board of Directors of the Association or the Association shall be sent by certified mail, postage prepaid, to 10711 Countryside Drive, Broomfield, Colorado 80030, until such address is changed by a notice of change of address mailed to each Owner by the Association.

Section 10. Leases. Any lease agreements between an Owner and a lessee shall provide that the terms of such lease shall be subject in all respects to the provisions of this Declaration and the Articles of Incorporation and Bylaws of the Association, and that any failure by the lessee to comply with the terms and provisions of such documents shall be a default under the lease. Further, all leases shall be in writing.

-24-

BK 2852 PAGE 491

Section 11. VA Approval. As long as there is a Class B membership, the following actions will require the prior approval of the Veterans Administration: annexation of additional properties, dedication of Common Area, and amendment of this Declaration.

IN WITNESS WHEREOF, the undersigned, being the Declarant herein, has hereunto set its hand and seal as of the day and year first above written.

U.S. HOME CORPORATION,
a Delaware corporation

By: _____
    President

STATE OF COLORADO      )
                       ) SS.
CITY AND COUNTY OF DENVER )

The foregoing instrument was acknowledged before me this 2nd day of October, 1978, by Jack A. Witkin as Division President of U.S. Home Corporation, a Delaware corporation.

WITNESS my hand and official seal.

My Commission expires: My Commission Expires January 15, 1983.

_____
Notary Public

-25-

# EXHIBIT 'D'

ASSESSMENT LIEN NOTICE
08/26/2019 09:31 AM    RF: $13.00   DF: $0.00
Arapahoe County Clerk, CO
Page: 1 of 1
Joan Lopez, Clerk & Recorder
**D9086953**

## NOTICE OF ASSESSMENT LIEN
**Sunburst Homeowners Association**
1499 W. 121st Ave. #100
Westminster, CO 80234

Date prepared: 07/27/2019

Notice is hereby given, pursuant to C.R.S. '38-33.3.316 and the provisions of the Declaration of Covenants, Conditions and Restrictions of the Sunburst Homeowners Association filed in the records of the Clerk and Recorder of **Arapahoe County**, there exists a lien against the following described real property situated in the County of Arapahoe, State of Colorado for unpaid assessments and charges, due the Sunburst Homeowners Association, a non-profit corporation, in the amount of: **$14,677.56.**

The property upon which the lien exists is situated in the County of Arapahoe, State of Colorado, more particularly described as: **Lot # 81, Block # 2,** Sunburst Subdivision, also known by street and number as:

**16316 E. Rice Place # A**
**Aurora CO  80015-1508**

The Sunburst Homeowners Association, a residential community in accordance with the Declaration recorded, Reception #1780506, Amended Reception #1785386.

NAME(S) OF OWNER(S):    **Justin Nien**

Pursuant to the provisions in the Declaration of Covenants and By-laws, the total amount of delinquent payments set forth (together with any and all payments which may become delinquent after the date of this notice), plus any and all interest, costs, late charges, expenses, filing fees and reasonable attorney's fees which may arise under these provisions shall be burdens running with and a perpetual lien in favor of the Association upon the specific residences to which such assessments apply.  This notice is not a lien.  The lien is created by the Declaration of Covenants and attached to the property on the date an assessment or other proper charge becomes due.

Sunburst Homeowners Association

By: _Andrea M Withrow_                                      Date _____
Andrea Withrow, President

State of Colorado     )
                      ) ss.
County of Adams       )

The foregoing instrument was acknowledged before me this ___6___ day of _August_, _2019_.

_Tina Marie Musser_
Notary Public

Sunburst Homeowners Association
1499 W. 121st Ave. #100
Westminster, CO 80234

TINA MARIE MUSSER
NOTARY PUBLIC
STATE OF COLORADO
NOTARY ID 20174046259
MY COMMISSION EXPIRES NOVEMBER 8, 2021